IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ROBERT GILL,

                **Plaintiff,**

v.

WEXFORD HEALTH SOURCES INC.,

                **Defendant.**

Case No. 25-cv-02088-MAB

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Robert Gill, an inmate in the custody of the Illinois Department of Corrections (IDOC) who is currently incarcerated at Centralia Correctional Center, brings this civil action pursuant to 42 U.S.C. §1983 for violations of his constitutional rights. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.[1] Pursuant to Section 1915A, the Cout must screen prisoner complaints to filter out non-meritorious claims and dismiss any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune. *See* 28 U.S.C. § 1915A(b).

### THE COMPLAINT

Plaintiff alleges that on March 16, 2022, while he was at Shawnee Correctional Center (Shawnee), Dr. Burrell, a dentist, extracted three of his teeth. (Doc. 1, p. 7). On June

---

[1] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a magistrate judge and Wexford's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between Wexford and this Court.

3, 2022, Dr. Burrell extracted Plaintiff's remaining six upper teeth. Dr. Burrell told Plaintiff that he would make dental impressions for dentures within the next two months. However, Dr. Burrell passed away before making the dental impressions. On January 10, 2023, Dr. Sandhu, a temporary dentist, extracted Plaintiff's three remaining lower teeth. Dr. Sandhu told Plaintiff that Plaintiff would be fitted for impressions for dentures within thirty days. (*Id.*).

In February 2023, when Plaintiff did not receive a dental pass to have his dental impressions made, he began submitting request slips to be seen by the dentist. (Doc. 1, p. 7). On March 9, 2023, Plaintiff filed Grievance #2023-3-64 complaining about the lack of dental treatment and his need for dentures so that he could eat properly. At this time, Plaintiff was experiencing problems eating, and his gums were swelling and becoming sore. (*Id.*).

On March 24, 2023, Plaintiff was seen by a different dentist, who looked at Plaintiff's gums and told Plaintiff that he was ready for dental impressions. (Doc. 1, p. 7). On April 13, 2023, Zack Love, a staff member, responded to Grievance #2023-3-64 stating that Shawnee did not have a dentist. Plaintiff submitted the grievance to the grievance officer, along with information that not having dentures was now impacting his quality of life. Plaintiff explained that he could not eat regular food. He also described having pain and that his gums would swell and bleed when eating. (*Id.*).

Because he was having difficulties eating, Plaintiff began buying commissary items that he could trade with other inmates for food items that were moist enough for him to eat. (Doc. 1, p. 8).

On September 13, 2023, Plaintiff sent a request to Bob Allard, who worked in clinical services, inquiring about the status of his grievance. (Doc. 1, p. 8).

On October 10, 2023, Plaintiff filed Grievance #2023-10-127 complaining that he had not received a response from the grievance officer for Grievance #2023-3-64. (Doc. 1, p. 8). On October 13, 2023, Counselor Houseman informed Plaintiff via a written response that Grievance #203-3-64 was responded to on April 13, 2023, by Zack Love, but Houseman did not explain why Plaintiff had not yet received a response from the grievance officer. Plaintiff never received a response from a grievance officer for Grievance #2023-3-64. (*Id.*).

Plaintiff continued to submit request slips to see a dentist to be fitted for dentures, and he continued to struggle to eat with swollen and bleeding gums. (Doc. 1, p. 8).

On May 22, 2024, Plaintiff was transferred to Centralia Correctional Center (Centralia). (Doc. 1, p. 8). Upon his arrival, he began submitting request slips to be seen by a dentist so that he could be fitted for dentures. (*Id.*). Centralia also did not have a dentist. (*Id.* at p. 9). On October 7, 2024, Plaintiff had an appointment with the dentist, Dr. Ford, and she took impressions for dentures. (*Id.* at p. 8). While waiting for his dentures, Plaintiff continued to send requests to the dentist complaining about the pain he experienced while eating without dentures. (*Id.*). Plaintiff finally received dentures eight months later on June 16, 2025. (*Id.* at p. 9).

Plaintiff asserts that Wexford Health Sources, Inc. (Wexford) has a practice of understaffing the healthcare unit and failing to fill vacancies appropriately. (Doc. 1, p. 9). After having his teeth extracted, Plaintiff was housed at two different correctional

facilities that did not have a dentist on staff. Without a dentist, Plaintiff did not receive timely care and had to wait over two years to receive dentures. During this time, he had difficulty eating and continued to suffer from pain and swollen and bleeding gums. (*Id.*).

## DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following count:

> **Count 1:**    Eighth Amendment claim against Wexford for deliberate indifference to Plaintiff's serious medical needs.

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the** *Twombly*[2] **pleading standard.**

The Eighth Amendment prohibits the deliberate indifference to a prisoner's "serious medical needs," as deliberate indifference "constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (internal quotations omitted). This indifference includes "intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment." *Id.* at 829. Usually, to successfully state an Eighth Amendment claim of deliberate indifference, a plaintiff must plead that the defendant knew of a serious risk of harm and consciously disregarded it. *See Giles v. Godinez*, 914 F.

---

[2] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

3d 1040, 1049 (7th Cir. 2019). As a corporation, however, Wexford can only be held liable for deliberate indifference if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir.2004). *See also Jackson v. Ill. Medi–Car, Inc.*, 300 F.3d 760, 766 n. 6 (7th Cir.2002) (private corporation is treated as though it were a municipal entity in a Section 1983 action).

Plaintiff has identified the practice of understaffing on the part of Wexford, specifically not having sufficient dental staff at Shawnee and Centralia. He alleges that insufficient dental personnel resulted in delayed dental appointments and the denial of dentures for over two years. In support of this allegation, Plaintiff provides a copy of his grievance in which the counselor responded to his complaints that he had not been scheduled for dental impressions by stating, "Shawnee still does not have a dentist." (Doc. 1, p. 10). At this stage, Plaintiff's allegations are sufficient for Count 1 to proceed against Wexford. *See Wynn v. Southward,* 251 F.3d 588, 593-94 (7th Cir. 2001) (finding that the plaintiff had stated a plausible Eighth Amendment claim where the plaintiff suffered bleeding, headaches, inability to chew, and disfigurement when his dentures were misplaced).

### DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** shall proceed against Wexford Health Sources, Inc.

The Clerk of Court shall prepare for Wexford the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and

this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If the Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Because this suit addresses medical claims, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Local Rule 8.2(b), Defendant should respond to the issues stated in this Merit Review Order.**

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and (if applicable) his or her attorney were

deemed to have entered into a stipulation that any unpaid costs taxed against the applicant shall be paid from any recovery secured in the action.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 4, 2026**

_____
**MARK A. BEATTY**
**United States Magistrate Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days or more**. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.